J-S31017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT DAVID WOOD, | : | |
| | : | |
| Appellant | : | No. 115 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 12, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001201-2024

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED OCTOBER 9, 2025**

Appellant, Vincent David Wood, appeals from the December 12, 2024 judgment of sentence[1] entered in the Bucks County Court of Common Pleas in which the trial court resentenced Appellant to an aggregate term of 9 to 18 years of incarceration, following his jury conviction for Possession with Intent to Deliver ("PWID") and related offenses. Appellant challenges the trial court's denial of his motion to suppress and several evidentiary rulings that the trial court made. After careful review, we affirm.

The underlying charges in this case arise out of Appellant's participation in four drug deliveries that occurred between March 14, 2023, and May 16,

_____

[1] Appellant purports to appeal from the order granting, in part, and denying, in part, his post-sentence motion; however, this appeal properly lies from the judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence made final by denial of post-sentence motions."). We have amended the caption accordingly.

2023.  The first delivery resulted in two non-fatal overdoses, and the second delivery allegedly caused a fatal overdose.  The third and fourth deliveries were the result of police-supervised controlled buys involving a confidential informant ("CI").  The Commonwealth charged Appellant with, *inter alia*, Drug Delivery Resulting in Death ("DDRD"), Involuntary Manslaughter, and PWID (Fentanyl).[2]  On December 19, 2023, while police officers took Appellant into custody, he resisted and caused minor injury to one of the officers effectuating the arrest.  On the same day, Appellant, after waiving his **Miranda** rights,[3] made incriminating statements to police officers during an interrogation.

Before trial, the Commonwealth notified Appellant in an omnibus pretrial motion that it intended to admit evidence of Appellant's prior bad acts, including other drug activity that occurred in 2023.  On May 13, 2024, Appellant filed an omnibus pre-trial motion seeking, *inter alia*, to prevent the Commonwealth from introducing evidence of his prior bad acts and to suppress his statements during the December 19, 2023 interrogation.  After a hearing on June 11, 2024, the trial court permitted the Commonwealth to admit evidence of Appellant's prior bad acts but limited it to drug activity occurring during the year 2023.  The court denied Appellant's motion to suppress his statements from the interrogation.

---

[2] 18 Pa.C.S. §§ 2506(a), 2504(a), and 35 P.S. § 780-113(a)(30), respectively.

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On July 8, 2024, Appellant filed a motion *in limine* again challenging the admission of certain portions of his interrogation, as well as videos seized from his cell phone where Appellant filmed mocking videos of individuals unconscious under the influence of drugs. During the motion hearing, the court agreed to exclude certain portions of the interrogation video but, relevant to this appeal, declined to exclude the portion of the interrogation where Appellant addressed the cell phone videos or the videos themselves. The court found that the videos were relevant to proving the Involuntary Manslaughter charge, specifically Appellant's recklessness with regard to a substantial and unjustified risk of death.

Appellant proceeded to a jury trial. On July 17, 2024, the jury found Appellant guilty of three counts of PWID (Fentanyl), four counts of Conspiracy (Delivery of Controlled Substances), one count of Criminal Use of a Communication Facility, and three counts of Recklessly Endangering Another Person.[4]

On September 13, 2024, the court imposed an aggregate sentence of 9 to 18 years of incarceration. On September 18, 2024, the court amended the aggregate sentence to 130 to 260 months of incarceration after noting that the court had inaccurately calculated the aggregate sentence on the record. On November 11, 2024, Appellant filed post-sentence motions requesting, *inter alia*, reconsideration of his sentence and a new trial based on the court's

_____

[4] 35 PS. § 780-113(a)(30), 18 Pa.C.S. §§ 903, 7512(a), and 2705, respectively. The jury found him not guilty of the remaining charges.

decision to admit evidence of Appellant's 2023 drug activity. On December 12, 2024, the trial court granted the motion in part, vacated Appellant's sentence, and resentenced him to 9 to 18 years of incarceration.[5]

This timely appeal follows. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the trial court err in finding that the Appellant's waiver of his *Miranda* warnings was knowing, intelligent, and voluntary, and in its denial of the motion to suppress the statement?

2. Did the trial court err in denying Appellant's motion *in limine*, which sought to preclude testimony and publication of videos seized from Appellant's cell phone, regarding unknown individuals overdosing and Appellant's comments regarding the persons displayed in the videos?

3. Did the trial court err in allowing the admission of Appellant's prior bad acts, specifically drug sales and transactions which took place in 2023, unrelated to the crimes at issue, as well as Appellant's arrest and physical confrontation with the police in December of 2023?

Appellant's Br. at v (capitalization altered).

In his first issue, Appellant avers that his waiver of *Miranda* rights was not knowing, intelligent, or voluntary and that the trial court erred in denying his motion to suppress his statements made to police officials during the December 19, 2023 interrogation. Appellant's Br. at 7-12. He argues that "his substance abuse disorder, displayed confusion, and twelve[] minute delay in taking action to sign the waiver form[] exhibited his lack of a knowing,

_____

[5] On December 16, 2024, the court memorialized its modification in a written order.

intelligent, and voluntary waiver. Moreover, by pushing []Appellant to sign the form, [the officers] essentially coerced []Appellant into signing the form and providing incriminating statements." **Id.** at 12. Appellant also points to the fact that he was "subjected to interrogation after having just been forcibly apprehended by police, *albeit* in part due to his own resistance." **Id.**

Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010). This Court is bound by the factual findings of the suppression court, but we are not bound by its legal conclusions, which we review *de novo*. **Commonwealth v. Briggs**, 12 A.3d 291, 320-21 (Pa. 2011). We may review "only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Harlan**, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

Generally, "because of the inherently coercive nature of police custodial interrogation, statements elicited from an accused in that environment are inadmissible unless the accused was informed of and, *inter alia*, voluntarily waived his privilege against self-incrimination and the right to counsel." **Commonwealth v. Clemons**, 200 A.3d 441, 471–72 (Pa. 2019) (citation omitted). To determine whether a waiver is valid, a suppression court must look to "the totality of the circumstances surrounding the waiver, including but not limited to the declarant's physical and psychological state, the attitude

exhibited by the police during the interrogation, and any other factors which may serve to drain one's powers of resistance to suggestion and coercion." *Id.* at 472 (citation omitted).

Here, the trial court found that Appellant was informed about the *Miranda* process by the interrogating officers, nodded affirmatively when asked if he understood his rights, and then signed a form outlining his *Miranda* rights before he continued speaking to the police. Trial Ct. Op., 3/6/25, at 6. The trial court also found that during the thirteen-minute period between Appellant receiving the waiver form and signing it, "the officers did not interrogate him," and instead conducted "a back-and-forth discussion concerning such things as the charges which the defendant faced[, t]he concept of conspirator liability, [and Appellant's] drug addiction." N.T. Pre-Trial Mots. Hr'g., 6/11/24, at 124. During that time, "[Appellant] was reading the [c]riminal [c]omplaint" and "asking the police officers many questions [] concerning potential liability for the conduct alleged." *Id.* The court ultimately found that Appellant "was not coerced in any way[,]" "there were no threats[,]" and Appellant "was alert and oriented during this period, was not under the influence of any substances [or] certainly did not appear to be, [and] did not appear to be mentally impaired in any way." *Id.* at 124-25.

The record supports the trial court's factual findings, and the totality of circumstances indicates that Appellant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. The interrogating officers did not pressure or coerce Appellant and explained several times that Appellant was

- 6 -

free to refuse to sign the waiver, whereupon they would end the interview. Exhibit CS-15, 12/16/23, at 12:34:50-12:43:58. While a thirteen-minute period of time elapsed before Appellant signed the **_Miranda_** waiver, he continuously engaged the interrogating officers to clarify and discuss the implications of the waiver during that period. **_Id._** This active involvement demonstrates that Appellant's choice to sign the waiver was deliberate and informed. Accordingly, the trial court did not err in denying Appellant's motion to suppress his statements to police during the December 19, 2023 interrogation.

Appellant's next two issues require us to consider the trial court's rulings on the admissibility of evidence. We review such determinations for an abuse of discretion. **_See Commonwealth v. Harris_**, 884 A.2d 920, 924 (Pa. Super. 2005). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." **_Id._** (citation omitted).

It is axiomatic that "[o]nly relevant evidence is admissible at trial." **_Commonwealth v. Christine_**, 125 A.3d 394, 398 (Pa. 2015) (citing Pa.R.E. 402). "Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence." **_Id._** (citing Pa.R.E. 401). However, even if evidence is relevant, it may be excluded "if its probative value is outweighed by a danger of . . . unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (b)(2). This Court has cautioned that "[w]hile Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*). Thus, there must be a "close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question." *Id.*

Appellant first asserts that the trial court erred in denying his motion *in limine* to suppress evidence of video footage found on Appellant's cell phone of individuals overdosing. Appellant's Br. at 12-15. He argues that the trial court erred in finding the evidence relevant to establishing the element of recklessness with respect to the charge of Involuntary Manslaughter because "while videos of third parties overdosing may be distasteful, immature, or immoral, such videos do not establish that Appellant was 'reckless'." *Id.* at 13.

Here, the trial court admitted the evidence at issue to permit the Commonwealth to use it to establish the element of recklessness required to prove Involuntary Manslaughter. "A person is guilty of involuntary manslaughter when[,] as a direct result of the doing of an unlawful [or lawful] act in a reckless or grossly negligent manner . . . , he causes the death of another person." 18 Pa.C.S. § 2504(a). "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustified risk that the material element exists or will result from his conduct." 18 Pa.C.S. § 302(b)(3).

The trial court found that "Appellant's statements in the videos reflected Appellant's knowledge of the effects of the substance in question and the unjustified risk posed to users of the substance" and "any undue prejudice alleged by Appellant was outweighed by the high probative value of the content of the videos." Trial Ct. Op. at 8.

We conclude that the trial court did not abuse its discretion in admitting the videos. The Commonwealth charged Appellant with Involuntary Manslaughter because of multiple overdoses that allegedly occurred as a result of his distribution of fentanyl. The videos, showing Appellant filming and mocking individuals rendered unconscious after ingesting fentanyl, were thus closely factually connected to the charged crimes. We conclude that the trial court properly concluded that the videos were relevant to establishing Appellant's knowledge of and subsequent conscious disregard of the substantial and unjustified risk of the effects of the drugs he distributed. The

trial court, therefore, properly denied Appellant's motion *in limine* to suppress the cell phone videos.

Appellant next asserts that the trial court erred in allowing the admission of evidence related to his 2023 drug activity.[6] Appellant's Br. at 16-18. Appellant concedes that this evidence was "relevant" but relies on Rule 404(b) to argue that the trial court should not have admitted it because the Commonwealth "had direct evidence to prove that Appellant delivered [heroin/fentanyl] to the [CI,]" and that the other uncharged drug activity was therefore unnecessary to prove a pattern of activity. *Id.* at 17-18. Therefore, the evidence "served no legitimate purpose, and served only to prejudice the Appellant[.]" *Id.* at 18.

The trial court found that "the disputed evidence was admissible for the purpose of proving that Appellant had the requisite intent to possess and distribute controlled substances during the four charged deliveries" and "availed himself of the opportunity to access controlled substances and took substantial steps to sell the controlled substances during a discrete time period in a discrete geographical area." Trial Ct. Op. at 10. The court emphasized

_____

[6] While Appellant's Statement of Questions Involved also references the admission of evidence of his "arrest and physical confrontation with the police in December of 2023," he fails to include any citation to the record or relevant case law to support his assertion that this evidence is inadmissible. Appellant's Br. at v, 16-18. We do not address the merits of this undeveloped argument. *See* Pa.R.A.P. 2119(a) (requiring "discussion and citation of authorities as are deemed pertinent").

that the prior bad acts were "limited to a particular time period, [2023, which was] the same year when the charged deliveries occurred[.]" *Id.*

We agree with the trial court that the evidence challenged by Appellant was relevant and probative. Upon review, we discern no abuse of discretion with the trial court's conclusion that the evidence was more probative than prejudicial, as the prior drug activity was limited to the same year and geographic area as the charged offenses. The trial court, therefore, properly denied Appellant's pre-trial motion to exclude the evidence pertaining to the 2023 drug activity.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/9/2025